FILED
IN OPEN COURT
APR 17 2026
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.

STEVEN C. JONES III,
a/k/a "Wild"
a/k/a "Wild Boy"

Defendant.

Criminal No. 2:26CR3

## STATEMENT OF FACTS

The United States and the defendant, STEVEN C. JONES III, stipulate that the allegations in Counts ~~Two~~ Three and ~~Three~~ Four of the Indictment and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and competent evidence:

1. On or about August 26, 2024, detectives from the Norfolk Police Department and deputies with the United States Marshals prepared to serve unrelated arrest warrants on the defendant when they located him in the Hilltop area of Virginia Beach in the Eastern District of Virginia. Prior to arrest, detectives observed the defendant open the door of a Jeep and appeared to move something underneath the driver's seat, as pictured below.





2. When deputies approached the defendant, he attempted to flee on foot but was quickly apprehended. Law enforcement ran a check on the Jeep and found it was registered as a rental car and had been rented by another individual. The detectives contacted the rental agency which indicated the Jeep was overdue and had not been paid for. The rental agency gave consent to search the Jeep and indicated the agency intended to take possession of the car. Upon searching the Jeep, detectives located a loaded firearm under the seat, in the area they had previously observed the defendant reaching into, as pictured below:




3. Forensic analysis of DNA obtained from the gun and DNA obtained from a buccal swab of the defendant resulted in a positive match. The lab report contained the following information about the match:

**Item 1 - Swab from firearm**

- A DNA mixture profile was developed.
  - Steven Jones cannot be eliminated as a major contributor.
    - The probability of randomly selecting an unrelated individual with a DNA profile matching the major profile developed from the swab at the PowerPlex® Fusion loci (with the exception of D13S317) is 1 in greater than 8.1 billion (which is approximately the world population) in the Caucasian, African American, and Hispanic populations.

4. The DNA match confirms that the defendant handled the firearm. The defendant was a previously convicted felon prior to August 26, 2024. The defendant knew he was a felon and not allowed to possess firearms.

5. On or about May 23, 2025, detectives from the Norfolk Police Department were executing a search warrant on an apartment in Norfolk in the Eastern District of Virginia, as pictured below:





6. Detectives were executing the warrant in an unrelated investigation into fraud and theft. Just prior to the search, detectives observed the defendant leaving the building as pictured below:



7. The apartment being searched by detectives had two bedrooms. Inside one of the bedrooms police located 40 grams of fentanyl (Count 3) and a Micro-Draco (Draco) firearm (Count

4) pictured below. The fentanyl was located inside a nightstand drawer, and the Draco was located underneath the dresser.



8. The police also found several items of clothing attributable to the defendant. The defendant can be seen in social media posts wearing some of the same distinct clothing items located inside the same bedroom as the drugs and gun. As detailed in the photos below, the defendant is seen on a post from his Instagram account (photos on left and center) wearing the same jackets and boots found during the search (photo on right).



9. Likewise, the detectives found a pair of red shoes bearing the lettering "411" and "WILD" in the bedroom (photo on right), which match a pair of shoes seen in a post from the defendant's Instagram account (photo on left):






10. During the search of the apartment, detectives also found a notebook containing a list of songs (photo on left) that matched the defendant's last album on Apple Music (photo on right):







11. The same notebook found at the apartment duirng the search, also contained a photograph of the defendant.

12. Also located in the same bedroom as the drugs and gun, the police found a Washington Nationals baseball cap (photo on left) that matched the baseball cap worn by the defendant in a post from his Instagram account (photo on right):





13. On September 11, 2025, the FBI was performing surveillance on the defendant with the intention of executing an unrelated fraud arrest warrant on the defendant at an apartment complex located in the city of Norfolk, in the Eastern District of Virginia. During this surveillance, an FBI agent witnessed an altercation between the suspect and an unknown female ("Victim 1"), which was later determined to be an armed robbery attempt for a backpack containing approximately two pounds of marijuana. The suspect was dressed in all black with a face mask and had previously identified himself to Victim 1 as a security guard. The suspect demanded Victim 1 open the trunk of her vehicle. Victim 1 then fled in her car and the suspect pursued and cut her off, directly in front of the FBI agent conducting surveillance. The initial chase is pictured below, with the defendant's vehicle highlighted in the red box, while Victim 1's vehicle is highlighted with a yellow box:





14. The suspect was observed in the car on the left, which is a white Audi A5 with Maryland license plates, and this vehicle had Steven Jones, III listed as the renter on file for the vehicle. This car physically cut off Victim 1's car directly in front of the FBI agent's vehicle, pictured below, highlighted with a green box:



15. The suspect then exited the Audi carrying a what an FBI Agent would testify was a Draco firearm and began smashing Victim 1's window while demanding she open the trunk. The surveillance footage pictured above also captured audio of the glass breaking, the suspect demanding Victim 1 open the trunk of her vehicle, and Victim 1 screaming. Victim 1 then fled in her car (yellow box), and the suspect pursued (red box) as depicted below:





16. The two cars originally travelled east. The FBI agent who was conducting surveillance on the defendant, called 9-1-1 and informed the dispatcher of a high-speed pursuit, describing the assailant as a tall man dressed all in black, was not able to identify the defendant at that time. Victim 1 originally called her husband, who was allegedly part of the initial altercation with the defendant at the apartment complex. On surveillance video from the complex, Victim 1's husband is seen on the phone with her, yelling for her to keep driving, not to stop, and to call 9-1-1. On the 9-1-1 recordings, Victim 1 frantically reports being shot at by the car pursuing her. Victim 1 attempted to evade the suspect and made a U-turn heading back in a westerly direction. The high-speed chase between the suspect and Victim 1 lasted approximately seven minutes. The suspect remained in pursuit of Victim 1, which was also captured on a traffic surveillance camera pictured below:



17. During the pursuit, Victim 1 (noted within the yellow box) struck a parked car near the 900 block of East Virginia Beach Boulevard, which did severe damage to both her car and the

parked car. The suspect (noted in the red box) continued to pursue, until Victim 1's vehicle came to a stop following the collision. The suspect then exited his vehicle and again produced a firearm and demanded that Victim 1 open the trunk of her vehicle. The suspect can be seen on surveillance video walking up to Victim 1's car (center picture), at which point Victim 1 complied with the suspect's demand to open the trunk of her vehicle (right picture):





18. The suspect then removed what was later determined to be a backpack containing, among other things, two pounds of marijuana. The suspect left the scene and shortly thereafter law enforcement arrived at the scene:



19. The FBI had previously obtained court ordered surveillance of the defendant's phone ending in x7958. That surveillance, in conjunction with call-detail records, allowed the agents to follow the defendant's phone until the defendant was taken into custody. The electronic surveillance showed the defendant's cellular phone moving from the area of the crash on Virginia Beach Boulevard, to the vicinity of Westover Avenue, Norfolk, at approximately 4:17 a.m. The defendant was seen backing the white Audi A5 into a parking spot before the defendant exited the vehicle wearing all black and walked in the direction of his apartment located along Westover

Avenue, Norfolk. At approximately 4:56 a.m., a black GMC Yukon SUV pulled in next to the Audi and an unknown male exited the Yukon and walked in the direction of the defendant's apartment. The unknown male then returned at approximately 5:05 a.m. and entered the driver's seat of the GMC Yukon. The FBI agents conducting surveillance had a partially obstructed view of the passenger side of the Yukon, but when the Yukon drove east out of the apartment complex at approximately 5:11 a.m., the x7958 phone number was also observed travelling east at the same time that the Yukon departed the complex. The phone travelled to the approximate location of the crash site on Virginia Beach Boulevard. At approximately 5:20 a.m., FBI agents conducting surveillance observed the Yukon return near Westover Avenue. FBI agents observed the Audi's lights being turned on and off several times in the next few minutes, consistent with the vehicle being unlocked and locked. FBI agents observed the Yukon leave a second time at approximately 5:40 a.m. The x7958 phone was then observed in the vicinity of 900 block of East Virginia Beach Boulevard at approximately 5:48 a.m., and then travelled east to the vicinity of Kempsville Road at approximately 5:54 a.m. The x7958 phone then travelled west back near Westover Avenue at approximately 6:12 a.m., where FBI agents observed the Yukon return at approximately 6:14 a.m.

20. In an attempt to serve the defendant's arrest warrant, an FBI negotiator called the defendant at x7958 multiple times starting at 7:56 a.m. which reflected that the x7958 phone was inside the residence near Westover Avenue with the defendant. The defendant was arrested by the FBI's Special Weapons and Tactics Team (SWAT). When he was taken into custody outside of the apartment, he was wearing dark clothing that an FBI Agent would testify matched the clothing of the suspect from the robbery earlier that morning. The FBI agent who had observed him during the altercation with the Victim 1 was then able to positively identify the defendant as the man that had broken Victim 1's car window using a Draco firearm.



TMM
SJ
OB

21. The cellphone registered to the x7958 phone number, and keys to the apartment, were recovered from the defendant during a search of his person pursuant to the arrest. Norfolk Police detectives obtained search warrants for the defendant's residence near Westover Avenue, Norfolk, and the Audi A5. As a result of the search, investigators located two pounds of marijuana and the Draco firearm allegedly used to break Victim 1's window. Both the gun and drugs were found hidden inside of an HVAC duct, inside of the apartment, pictured below:






22. The defendant admits that he was in possession of the fentanyl recovered on May 23, 2025, and the marijuana recovered on September 11, 2025. The defendant further admits that the fentanyl was intended to be sold for profit. The defendant admits he was in possession of the Draco firearm that was located in the same room and apartment as the fentanyl. And the defendant admits he possessed that firearm in furtherance of a drug trafficking crime prosecutable in a court of the United States, that is, possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841, as charged in Count Three of the indictment. Finally, all three firearms mentioned above were manufactured outside of the Commonwealth of Virginia and have traveled in interstate commerce.

23. The acts undertaken by the defendant, STEVEN C. JONES III, in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law.

Respectfully submitted,

Todd Blanche
Acting Attorney General

By: ______________________________
Joseph E. DePadilla
Taryn M. Meeks
Attorneys for the United States



JMM
SV
OB

*UNITED STATES v. STEVEN C. JONES III*, 2:26cr3

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, STEVEN C. JONES III, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

STEVEN C. JONES III
Defendant

I am counsel for STEVEN C. JONES III. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Diane P. Toscano, Esq.
Attorney for STEVEN C. JONES III